UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
MAIMUN N. KHAN,

              Plaintiff,

    -against-

MOHAWK VALLEY COMMUNITY
COLLEGE,

              Defendant.
-------------------------------------------------------------------- X

Case No.: 6:25-cv-211 (LEK/ML)

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Maimun N. Khan, by and through her attorneys, Harding Mazzotti, LLP, as and for her Complaint against Defendant, Mohawk Valley Community College, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This action is brought to remedy the unlawful retaliatory termination Plaintiff was subjected to following her participation in a federal agency's investigation into allegations of widespread gender discrimination at Mohawk Valley Community College, where Plaintiff was employed for almost twenty (20) years before and for only one (1) week after she engaged in protected activity.

2. Plaintiff seeks declaratory relief, monetary relief, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This action arises under Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290, *et seq.*

1

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and the principles of pendant jurisdiction.

5. Venue with respect to this action lies within the Northern District of New York pursuant to 28 U.S.C §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Utica, New York, which is located within this judicial district.

## ADMINISTRATIVE REQUIREMENTS

6. On January 10, 2019, Plaintiff filed a pro se charge with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 525-2018-00943). Plaintiff's charge alleged that she was retaliated against in violation of Title VII and the NYSHRL for participating in an EEOC investigation of gender discrimination complaints at MVCC.

7. On October 13, 2023, the EEOC issued a probable cause determination.

8. On November 15, 2024, the EEOC issued a Notice of Right to Sue which is annexed hereto as **Exhibit "A".** Plaintiff's Complaint is timely filed within 90 days of receipt of the Right to Sue.

9. No conditions precedent are required before filing claims under the New York State Human Rights Law.

## THE PARTIES

10. Plaintiff is a female over the age of eighteen who resides in New Hartford, New York.

11. Defendant ("MVCC") is a community college located in the county of Oneida and State of New York with an address of 1101 Sherman Drive, Utica, New York 13501.

12. Defendant employs more than five-hundred (500) employees and is an employer within the meaning of Title VII, and the New York State Human Rights Law.

**STATEMENT OF FACTS**

13. In 2000, Plaintiff was hired by Defendant to work as a Counselor in MVCC's Counseling Center. This appointment was considered year-to-year and year after year, MVCC chose to renew Plaintiff's appointment.

14. In or about 2006, Defendant awarded Plaintiff a career appointment as a Counselor – the equivalent of tenure for non-faculty employees. Thereafter, Plaintiff applied for and was granted Profession Levels I through IV.

15. Plaintiff worked for Defendant in this capacity until March 2012. At that time, Defendant changed the licensure requirements for the Counselor job and then deemed Plaintiff ineligible for the position despite previous assurances to the contrary.

16. On March 19, 2012, Defendant's Board of Trustees approved Plaintiff's appointment to a new position which she started the following day – Career and Student Employment Specialist in Career, Transfer and Job Placement Services.

17. As part of negotiation regarding the terms of her new position, Defendant required Plaintiff to give up her tenure. Accordingly, her new role began as a year-to-year appointment. Thereafter, Defendant renewed Plaintiff's appointment each year until the spring of 2014 when several individuals recommended Plaintiff for career appointment. She was granted "Career Appointment" effective September 1, 2014.

18. Plaintiff performed this job until Defendant eliminated the position effective May 1, 2015.

19. Thereafter, on June 28, 2016, Defendant rehired Plaintiff as a Completion Coach. Again, Plaintiff had to start this position as year-to-year.

20. From August 1, 2016 through the end of her employment, Plaintiff was employed by Defendant in this capacity.

21. As a Completion Coach, Plaintiff's job was to coach and counsel students as part of the "Pathways to Graduation" program. Specifically, Plaintiff was tasked with helping to guide students academic and career paths.

22. At the time Defendant made Plaintiff a Completion Coach, the job was new to MVCC and neither the role nor the software needed to fulfill it were fully developed.

23. Aware that the software's functionality was extremely important, Plaintiff regularly attended trainings with the IT department and appropriate trainers to create trainings and handouts to facilitate a smooth start for herself and her colleagues that were also transitioning into the role.

24. As a result, Plaintiff took on a de facto leadership role in trainings for faculty and staff and in creating worksheets and manuals.

25. Although Plaintiff requested certain majors be assigned to her in her role as a Completion Coach, Defendant assigned her to work with the students who had declared their major to be General Studies. This was not only the largest group of students but also the most challenging group to be assigned to as a Completion Coach because the students were more likely to be unsure of their future plans and there were no specific shared core classes Plaintiff could visit to start building relationships with the students as a group.

26. Accordingly, it was understood that certain metrics, including the raw number of student contacts Plaintiff made, would be different than it was for other Completion Coaches.

27. After her initial year (2016-2017) in the job, Defendant renewed Plaintiff's appointment for the 2017-2018 school year.

28. At the end of February 2018, Plaintiff's supervisor Ibrahim Rosic ("Rosic") emailed her about goals for the following school year and to schedule a meeting during spring break to discuss these plans further.

29. In or about March or April 2018, Plaintiff met Rosic for the annual review and planning for the following year. During this meeting, Plaintiff's goals for the following year were discussed with Rosic expressing approval of Plaintiff's plans. The two ended with an agreement to finalize details of same over the summer. Plaintiff was given no indication that her performance was such that Defendant would not be renewing her appointment for the 2018-2019 school year. Plaintiff had also not been given any reason to believe that she would not be renewed for the following year at any point prior to that meeting or in communications immediately following the meeting.

30. On March 21, 2018, Rosic wrote a review of Plaintiff which, while addressing a small number of areas that needed "further enhancement," included a substantial amount of praise for Plaintiff, her performance, and her contributions. To the extent that there were aspects of Plaintiff's performance that needed improvement, they were primarily related to the anticipated challenges associated with her assignment to the General Studies major.

31. On March 29, 2018, Rosic emailed Plaintiff praising her experience and expressing confidence in her ability to increase the number of students she coached. Both Plaintiff and Rosic knew that Plaintiff was faced with additional challenges due to her specific assignment but had discussed ways in which the number of contacts could be improved and plans for same moving forward.

32. On April 11, 2018, Defendant was notified that the EEOC would be interviewing Plaintiff in connection with four (4) gender discrimination complaints filed against Defendant by three (3) different employees.

33. On May 3, 2018, Plaintiff did in fact participate in this interview as planned.

34. Throughout her employment with Defendant, Plaintiff was subjected to discrimination and hostile work environment on the basis of her gender and witnessed gender discrimination against other women, both students and employees, at MVCC.

35. Plaintiff herself had dealt with such discrimination when working with the supervisor against whom some of the claims had been made and had contacted the EEOC at that time but ultimately decided not to file a charge, primarily due to fear of repercussions. Plaintiff was also aware of other females who had been discriminated against and subjected to a hostile environment that had been too afraid to make reports. Accordingly, during Plaintiff's interview with the EEOC, she provided information that supported allegations of gender discrimination at MVCC.

36. One week later, on or about May 10, 2018, Plaintiff was advised that Defendant would not be renewing her appointment. Plaintiff was also advised that she was not to return to work effective immediately, but that she would be considered employed and paid through the end of her appointment on August 31, 2018.

37. Throughout Plaintiff's employment, until such time as she participated in the EEOC's investigation, she received accolades, repeated promotions in level and pay increases, and appointments to various additional committees and duties due to her performance and commitment to the MVCC community.

38. When Defendant's chose not to renew Plaintiff's contract in retaliation for participating in the EEOC investigation, she was less than six (6) months shy of having twenty (20) years of service in the New York State Employee Retirement System. This benchmark, which Defendant stopped Plaintiff from reaching, would have provided Plaintiff with significantly greater financial security when she was ready to retire.

## AS AND FOR A FIRST CAUSE OF ACTION
### Retaliation for Protected Complaints in Violation of
### Title VII 42 U.S.C. § 2000e *et seq.*

39. Plaintiff repeats, realleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

40. Defendant retaliated against Plaintiff in violation of her rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* for participating in an EEOC investigation of gender discrimination claims against Defendant and for providing information supporting the allegations.

41. Defendant advised Plaintiff that she was no longer to report to work effective immediately and that they would not be renewing her appointment just one week after she participated in the investigative interview with the EEOC.

42. Defendant chose not to renew Plaintiff's appointment because of her participation in the EEOC investigation.

43. Plaintiff suffered emotional distress as a result of the retaliatory non-renewal.

44. Plaintiff suffered significant economic loss as a result of the retaliatory non-renewal.

45. Defendant should also be liable to Plaintiff for punitive damages, since Defendant was intentionally and recklessly indifferent to Plaintiff's rights in not renewing her appointment.

7

46. Defendant engaged in retaliation with malice and with reckless indifference to the right of the Plaintiff to be free from such intentional retaliation.

47. Defendant retaliated in the face of a perceived risk that its actions would violate federal law.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Retaliation for Protected Complaints in Violation of**
**New York State Human Rights Law (NYSHRL),**
**New York State Executive Law § 296(7)**

48. Plaintiff repeats, realleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

49. New York State Executive Law § 296(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate against any person because he or she person has opposed any practice forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

50. During the period of Plaintiff's employment, Defendant was subject to the provisions of the NYSHRL.

51. A plaintiff makes a *prima facie* case for retaliation under the NYSHRL by showing that (1) she engaged in a protected activity; (2) the employer was aware of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse or disadvantageous action.

52. Plaintiff engaged in protected activity by participating in an EEOC investigation of gender discrimination claims against Defendant and for providing information supporting the allegations

53. Defendant advised Plaintiff that she was no longer to report to work effective immediately and that they would not be renewing her appointment just one week after she participated in the investigative interview with the EEOC.

54. Defendant chose not to renew Plaintiff's appointment because of her participation in the EEOC investigation.

55. Plaintiff suffered emotional distress as a result of the retaliatory non-renewal.

56. Plaintiff suffered significant economic loss as a result of the retaliatory non-renewal.

57. Defendant should also be liable to Plaintiff for punitive damages, since Defendant was intentionally and recklessly indifferent to Plaintiff's rights in not renewing her appointment.

58. Defendant engaged in retaliation with malice and with reckless indifference to the right of the Plaintiff to be free from such intentional retaliation.

59. Defendant retaliated in the face of a perceived risk that its actions would violate state law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demands judgment in her favor against Defendant as follows:

   A. Declaring Defendant's conduct to be in violation of Plaintiff's rights under Title VII and NYSHRL.

   B. Awarding Plaintiff back pay, front pay, pre-judgment interest, lost fringe benefits, compensatory damages, liquidated damages, punitive damages, costs, and attorney's fees; and

   C. Awarding Plaintiff such other, further, and/or different relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury with respect to all issues properly triable by jury.

Dated: February 13, 2025
       Albany, New York

                            **HARDING MAZZOTTI, LLP**

By: *(signature: Melanie Lazarus)*
      MELANIE J. LAZARUS, ESQ.
      *Attorneys for Plaintiff*
      1 Wall Street
      Albany, New York 12205
      Tel.: (518) 556-3476
      Email: melanie.lazarus@1800law1010.com

TO:    MOHAWK VALLEY COMMUNITY COLLEGE
         1101 Sherman Drive
         Utica, New York 13501